IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JANICE ANN YOUNG                                CV 06-6271-MA

       Plaintiff,                               OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


KATHRYN TASSINARI
DREW L. JOHNSON
Drew L. Johnson P.C.
1700 Valley River Drive
Eugene, OR 97401
(503) 434-6466

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1 - OPINION AND ORDER

JOANNE E. DANTONIO
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2730

       Attorneys for Defendant

MARSH, Judge.

     Plaintiff Janice Ann Young filed this action for judicial review of a final decision of the Commissioner denying her May 19, 2004, application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.

     On the date of the Commissioner's decision, plaintiff was 54 years old.  She attended Business College for six months. Her past relevant work includes jobs as an activities director in an assisted living facility, procurement clerk, receptionist, and machine shop worker.  Plaintiff claims she has been disabled since May 13, 2004, because of fibromyalgia and osteoporosis.

     The Administrative Law Judge (ALJ) held a hearing on March 22, 2006, at which plaintiff and a vocational expert testified. Plaintiff was represented by counsel.  On June 6, 2006, the ALJ issued an opinion finding that plaintiff was not disabled, and the Commissioner affirmed the ALJ's decision on appeal. Plaintiff now seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.  The Commissioner contends her decision should be

2 - OPINION AND ORDER

affirmed because it is based on substantial evidence and free from legal error.  This court has jurisdiction under 42 U.S.C. § 405(g).

For the following reasons, the court AFFIRMS the final decision of the Commissioner and DISMISSES this action.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff has impairments of fibromyalgia and osteoporosis that are severe under 20 C.F.R. § 404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. §§ 404.1520(a)(4)(iii) and (d).

3 - OPINION AND ORDER

The ALJ found plaintiff has the residual functional capacity to perform sedentary work with no more than two hours on her feet, no prolonged standing or walking (maximum 30 minutes at a time), and sitting limited to no more than one hour at a time. Plaintiff also should not climb ladders, ropes, or scaffolds, and should only stoop, kneel, crouch, or crawl occasionally. The ALJ, however, also found plaintiff's allegations regarding her functional limitations were not "totally credible."

At Step Four, the ALJ found plaintiff is able to perform her past relevant work as a procurement clerk. 20 C.F.R. §§ 404.1520(a)(4)(v). Based on this finding, the ALJ did not need to reach a finding at Step Five.

Consistent with the above findings, the ALJ found plaintiff is not under a disability and denied her claim for benefits.

On September 14, 2006, the Appeals Council's affirmed the ALJ's decision and, therefore, it became the final decision of the Commissioner for purposes of judicial review.

## LEGAL STANDARDS ON JUDICIAL REVIEW

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which . . . has lasted
or can be expected to last for a continuous period of not less
than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).

The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision.  Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation."  Andrews,
53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record, however is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  Mayes v. Massanari,
276 F.3d 453, 459-60 (9th Cir. 2001).

5 - OPINION AND ORDER

## DISCUSSION

Plaintiff contends the ALJ failed to give clear and convincing reasons for rejecting both her testimony and her treating physician's opinion regarding her level of pain and resulting functional limitations.  Plaintiff asserts if the rejected evidence is credited, she is entitled to benefits.  Accordingly, plaintiff seeks an order remanding this case to the ALJ for an award of benefits.

The Commissioner contends the ALJ properly analyzed plaintiff's testimony and the medical opinion evidence and provided clear and convincing reasons for rejecting aspects of both in reaching her non-disability determination.

**Plaintiff's Testimony.**

Plaintiff testified regarding the extent and consequences of her pain and her resulting functional limitations.  The ALJ found some of plaintiff's subjective testimony was not entirely credible and therefore rejected it.

Standards.

For the ALJ to reject plaintiff's subjective complaints, she must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Without affirmative evidence showing plaintiff is malingering, the Commissioner's reasons for rejecting plaintiff's testimony must be clear and

convincing. See Lester, 81 F.3d at 834; Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989). If the ALJ finds plaintiff's testimony as to her level of pain and resulting functional limitations is unreliable, the ALJ must make a credibility determination setting forth the reasons why the testimony is unpersuasive. See Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991). The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. See Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Varney v. Secretary of Health and Human Services, 846 F.2d 581, 584 (9th Cir. 1988). To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) medical evidence tending to discount the severity of subjective claims. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary. See Yuckert v. Bowen, 841 F.2d 303, 307 (9th Cir. 1988).

<u>Plaintiff's Testimony</u>.

Plaintiff and her husband live in Cottage Grove.  Most recently, she worked full-time at an assisted living facility, planning activities and entertainment.  Before she finally quit her job in May 2004, her medical condition got progressively worse and, "off and on for a month" she cut back her hours. "[O]ne day would not be too bad" but "the next day maybe or the next three days would be just really excruciating pain."  After plaintiff quit her job, there was a period of time when, on her good days, she would occasionally visit the facility for a brief get-together with residents.  She also volunteered a couple of days at a seniors' center during which she worked for an hour serving food.  The day after such activity, however, plaintiff had pain from the waist down, mainly in her legs.  As a result she stopped volunteering.

Plaintiff is prescribed Vicodin to control her pain and clonzabenzaprine for muscle and leg pain and to help her sleep. She usually sleeps three to four hours, awakens because of pain, takes a Vicodin pill, and sleeps another couple of hours.

Plaintiff's daily activities include stretching exercises, and on good days, household tasks such as dusting and laundry, and hobbies such as flower arranging, sewing, and crafts.  She is able to do these activities for about 30 minutes before she

needs to rest.  She does other chores such as the dishes and is able to sit and/or stand comfortably for about 20-30 minutes. Once a week or so, she shops for groceries either by herself for small items or with her husband for major shopping.

On really bad days, plaintiff may take a bath to ease her pain and she lays down at least 60 percent of the time.  She has those days two or three times a week, depending on the amount of work she has done the day before and the weather.  She does not like to wear tight fitting clothes because they cause excruciating pain.  She will usually take half a Vicodin pill every four hours during the day to handle the pain.

Plaintiff had surgery to remove a nerve on her foot, and her knees occasionally swell when she is on her feet.  She has an migraine headache occasionally, less frequently after she stopped working.

The ALJ's Credibility Determination.

The ALJ found plaintiff suffers from fibromyalgia.  He did not, however, entirely credit plaintiff's testimony regarding her functional limitations.  He noted objective studies of the lumbar region and knee were "essentially unremarkable."  Although she reported swelling of the knee, none was observed on x-ray.  The ALJ also noted inconsistencies in the medical record and her testimony.  Although plaintiff complained of fatigue and lack of

9 - OPINION AND ORDER

sleep, the medical records and her testimony reflect that medication provided relief.  The ALJ's comments are supported by the record.  On some visits to Dr. Maier, plaintiff told him she was not sleeping well, and on other occasions, she told him her sleeping had improved with medication.  In her testimony, she stated she would sleep for four hours, take some Tylenol, and sleep another couple of hours.  In the final three months of her treatment by Dr. Maier, she told him her sleep was "stable" with medication and she was doing "reasonably well."

The ALJ also noted that, despite her claim of a level of pain preventing her from performing even sedentary jobs, plaintiff was able to do household chores, grocery shopping, and some exercise.

I find the ALJ carefully reviewed the medical record and plaintiff's testimony as a whole, and gave clear and convincing reasons for not entirely crediting her description of functional limitations that supposedly preclude her from performing even sedentary jobs.

**Medical Record.**

Rheumatologist, William Maier, M.D., was plaintiff's primary treating physician.  He opined that plaintiff suffers from fibromyalgia and osteoporosis to an extent that will cause her to be absent from work five or more days per month and, therefore, will preclude her from completing a regular and reliable work

schedule, even for a sedentary job.[1]

The ALJ rejected Dr. Maier's disability opinion and relied on the opinions of non-examining consultants as to plaintiff's residual functional capacity.

Standards.

A treating physician's opinion, while given deference based on the physician's greater opportunity to know and observe the patient as an individual, Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987), is not necessarily conclusive either as to the plaintiff's physical condition or as to the ultimate issue of disability.  See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989); Rodriquez v. Bowen, 876 F.2d 759, 761-62 & n. 7 (9th Cir. 1989).

The opinion of a treating physician may be rejected in favor of a non-treating physician's opinion only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Andrews v. Shalala, 53 F.3d

---

[1] Plaintiff has also treated for other medical conditions. For instance, in February 2005, plaintiff underwent surgery to remove her gallbladder after she complained of mild epigastric and right upper quadrant tenderness that was causing her to suffer from episodic nausea and vomiting.  The surgery and its aftermath, as well as complaints of migraine headaches and neck pain from an automobile accident in June 2003 do not appear to be related to the fibromyalgia and osteoporosis diagnoses and are not relevant to the medical condition on which her disability claim rests.

1035, 1041 (9th Cir. 1995); Magallanes, 881 F.2d at 751, 755.

Opinions of a non-examining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. Andrews, 53 F.3d at 1041. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. Magallanes, id., 881 F.2d at 750.

Dr. Maier's Medical Reports.

Dr. Maier treated plaintiff from August 2003 through April 2005. On her first visit, plaintiff stated she had suffered from generalized musculoskeletal pain since high school, which had worsened for the past several years. She also reported daytime sleepiness and fatigue, although medication "normalized her sleep." Plaintiff reported she had been in a motor vehicle accident two months earlier and had suffered a "flare (sic) of right-sided frontal headache" since then, along with neck pain that was gradually improving.

Dr. Maier diagnosed fibromyalgia based on his finding that there was "no other metabolic or autoimmune explanation for her symptoms." He recommended physical therapy involving stretching exercises and an aerobic conditioning program. Lumbar spine x-rays and other diagnostic tests were normal except that an

osteoporosis screening revealed plaintiff had a risk of future hip fracture of "approximately 21%," which was "between 2 and 4 times normal."

In January 2004, plaintiff reported to Dr. Maier that her musculoskeletal pain had worsened and medication had not helped her sleep disorder. On examination, plaintiff had multiple trigger points but no focal neurologic findings. She was tearful during the exam. Dr. Meier prescribed Vicodin for pain control.

In April 2004, plaintiff told Dr. Maier she was sleeping well but hurting most of the day. Plaintiff's objective findings were similar to her first visit. Her mood was stable. Plaintiff questioned whether her job as an activities director aggravated her symptoms and wondered whether she should take some time off. Dr. Maier strongly recommended exercise and swimming and thought she might benefit from a leave of absence.

A week later, Dr. Maier examined plaintiff for a complaint of swelling and worsening pain in her knees. Plaintiff had some pain on maximum flexion, with some crepitation but no swelling, redness, or warmth. Dr. Maier suggested plaintiff ice the knee for acute pain. Knee x-rays showed mild patella-femoral incongruity and minimal osteophytic spurring of the tibial plateau. Plaintiff told Dr. Maier she had decided to stop working and apply for Social Security Disability. Dr. Maier

13- OPINION AND ORDER

again recommended swimming, conditioning, and a "change in lifestyle."

In August 2004, plaintiff told Dr. Maier she was "feeling better off work" and was exercising and sleeping better with the help of Vicodin.  Through November 2004, when Dr. Maier examined plaintiff for the last time, he noted plaintiff continued to struggle with insomnia and chronic musculoskeletal pain.

In his chart notes from December 2004 through March 2005, Dr. Maier noted plaintiff was "doing reasonably well" and that sleep was "stable on Flexoril."

In December 2005, plaintiff's attorney asked Dr. Maier to answer a series of questions in writing regarding plaintiff's medical condition and her functional limitations, for submission to the ALJ in connection with plaintiff's disability claim.

Before responding to plaintiff's attorney, Dr. Maier reexamined plaintiff on January 3, 2006, and found that, "after a six month absence," plaintiff had "no focal neurological findings," bone density studies showed improvement of the hip and lumbar spine, and her fibromyalgia was "stable."  Dr. Maier prescribed extra Vicodin for plaintiff to use "during the more painful time of year."[2]

---

[2] The ALJ incorrectly stated plaintiff had not seen Dr. Maier for 10 months.  The report of the visit, however, was not included in the record until after the ALJ issued her decision.

14 - OPINION AND ORDER

In summary, Dr. Maier's responses to the questions asked by plaintiff's attorney were that plaintiff has suffered from fibromyalgia for more than 12 consecutive months.  She endures fatigue and drowsiness (from medications), as well as muscle and joint pain in the spine, neck, hip, hands, and feet pain frequently during the day.  Dr. Maier concluded that plaintiff can lift up to 10 lbs, sit for 30 minutes at one time, walk two city blocks, and stand and walk for 20 minutes at one time.  She will have "good" and "bad" days, and will likely be absent from work on an average of five days a month.  Based on plaintiff's testimony that she needed a week to recover when she tried to work part-time, Dr. Maier opined plaintiff was unable to complete a regular and reliable work schedule, even while performing sedentary jobs.

In January 2006, the ALJ requested that Dr. Maier explain his responses regarding plaintiff's functional limitations based on the fact there was no evidence Dr. Maier had performed any capacity testing and that Dr. Maier's opinion appeared to based "on plaintiff's self-reports."  Dr. Maier responded tersely, as follows:  "If you question my honesty and clinical skills, I might suggest referral to a physical specialist for capacity testing."  It is apparent Dr. Maier did not do any testing himself.

15 - OPINION AND ORDER

The ALJ's Rejection of Dr. Maier's Opinion.

The ALJ found Dr. Maier's "unnecessarily curt response failed to provide any rationale or support for his opinion, which is not supported by his own treating chart notes."

As noted, the ALJ correctly noted that Dr. Maier's opinions regarding plaintiff's functional limitations were not supported by any evidence that he performed capacity testing.  The opinions appear to be based solely on plaintiff's self-reporting, which the ALJ justifiably found not entirely credible.  Dr. Maier was aware plaintiff's attorney was seeking his opinion regarding plaintiff's ability to work.  Nevertheless, other than stating plaintiff was doing "reasonably well," the report does not refer to any tests Dr. Maier performed to determine plaintiff's functional limitations.

Accordingly, instead of relying of Dr. Maier's opinion as to plaintiff's functional limitations, the ALJ relied on the opinions of non-examining consulting physicians, who reviewed the medical records and concluded plaintiff had the residual functional capacity to lift and carry 20 lbs, stand and walk two hours in an eight hour day, and sit with no restrictions.  The ALJ found the consulting physicians' opinion as to plaintiff's residual functional capacity was entitled to greater weight than Dr. Maier's opinion because it was "consistent with the full record."  I agree with the ALJ's assessment of the record.

On this record, I conclude the ALJ's findings are supported by substantial evidence in the record as a whole and plaintiff has failed to establish her entitlement to disability insurance benefits.

### CONCLUSION

For all the reasons stated above, the court AFFIRMS the final decision of the Commissioner and DISMISSES this action.

IT IS SO ORDERED.

DATED this 20 day of August, 2007.


/s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge